HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORRAINE KENNY,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BNSF RAILWAY COMPANY, et al.,<br><br>　　　　　　　Defendants.<br><br>consolidated with<br><br>LOEHR v. BNSF RAILWAY COMPANY, et al., C11-729 MJP | No. 2:11-cv-00624-RBL<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE LIABILITY |

THIS MATTER comes before the Court on Plaintiff's Motion for Summary Judgment Re Liability [Dkt. #36]. The action involves the deaths of two railroad workers, Thomas J. Kenny and Christopher James Leohr.

**I. BACKGROUND**

Defendant Burlington Northern Santa Fe Railway Company (BNSF) is a Delaware corporation that owns and operates railroads throughout the United States, including in the State of Washington. Def. BNSF's Answer at 1 [Dkt. #26]. BNSF entered into a service agreement with Outsource Administrators, Inc. (OAI) to manage the transportation of its employees, and OAI selected Defendants Coach America and Coach USA (collectively, CUSA) to perform shuttle services for BNSF employees in Washington. Def. BNSF's Resp. at 2 [Dkt. #61].

BNSF owns and maintains a private grade crossing at its Longview Yard near Kelso, Washington, that enables vehicles to access the BNSF Yard Office and other facilities. *Id.* at 2.

ORDER - 1

The crossing consists of a road intersecting three sets of railroad tracks. Pl.'s Mot. at 2 [Dkt. #36]. The road is not guarded by crossing bars, but a rail crossing sign and a stop sign are posted at the crossing's entrance. Decl. of Darr Kirk at 8, 19 [Dkt. #37]. On March 23, 2011, a CUSA shuttle was scheduled to transport three BNSF crew members, Thomas Kenny, Christopher Loehr, and Dwight Hauck, from the Longview Yard to a hotel in Vancouver, Washington. Pl.'s Mot. at 4 [Dkt. #36]. The shuttle, driven by a CUSA employee, entered the crossing and collided with a northbound freight train that pushed the vehicle down a nearby embankment. *Id.*; Decl. of David Ortner at 6 [Dkt. #38]. The accident killed Mr. Kenny, Mr. Loehr, and the driver. Pl.'s Mot. at 2 [Dkt. #36]. Mr. Hauck was hospitalized with severe head injuries and is unable to testify. Pl.'s Reply at 3 [Dkt. #64].

Members of the Kelso Police Department responded to the scene of the accident and produced a report detailing the results of their investigation. Decl. of Darr Kirk at 2 [Dkt. #37]. Detective Dave Voelker interviewed Edward Whitman, the train's engineer, who stated he was driving the train when the collision occurred. *Id.* at 19. Mr. Whitman told Detective Voelker that because the grade crossing was private, he was not required to use and therefore did not use the train's whistle. *Id.* He said that he did sound the train's warning horn, however. *Id.* Mr. Whitman also indicated the train was traveling at approximately forty-seven miles per hour at the time of impact. *Id.*

In addition to the statements from Mr. Whitman and other witnesses, the police viewed footage from two video cameras—one positioned in the cab of the train involved in the accident and the other positioned in the rear of a stationary train—that captured some of the events leading up to the collision. Def. BNSF's Resp. at 2 [Dkt. #61]. Captain Darr Kirk and Detective Hochhalter viewed the videos. Kirk Decl. at 30–35 [Dkt. #37]. Kirk reported that the video showed the shuttle entering the crossing without stopping. *Id.* at 30. Hochhalter indicated the colliding train's video revealed approximately thirty seconds of ringing bells prior to the train's impact with the shuttle. *Id.* at 35. He also described the footage from the stationary train as follows:

> The video shows that the driver of the Suburban swung wide to the left before turning east over the crossing and it appears to indicate that the driver of the Suburban did not stop for the stop sign west of the tracks prior to making this turn at the crossing.

*Id.*

ORDER - 2

Lorraine Kenny and Carl Loehr filed separate actions against BNSF and CUSA on behalf of the decedents' estates and their statutory beneficiaries. The Court consolidated the suits under the Kenny litigation for pretrial purposes. [Dkt. #23]. Plaintiff Kenny now moves for partial summary judgment as to the liability of both defendants. Plaintiff alleges liability against BNSF under the Federal Employers' Liability Act, 45 U.S.C. §51 et seq., and against CUSA under state statutory and common law negligence theories.

## II. AUTHORITY

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

The Federal Employers' Liability Act (FELA) provides for the recovery of railroad employees that are injured or killed due to the negligence of the railroad:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. The words "common carrier by railroad" mean "one who operates a railroad as a means of carrying for the public." *Edwards v. Pac. Fruit Exp. Co.*, 390 U.S. 538, 540 (1968) (internal quotation marks omitted). The measure of duty owed to a railroad employee under the FELA is to exercise "reasonable and ordinary care" within the circumstances. *E.g.*, *Del., L. & W.R. Co. v. Koske*, 279 U.S. 7, 11 (1929); *McGivern v. N. Pac. Ry. Co.*, 132 F.2d 213, 217 (8th Cir. 1942). The causal connection between the railroad's act and the employee's injury that is necessary to establish liability differs from the common law concept of proximate cause, and the employee need only show that the railroad's negligence "played any part, even the slightest, in producing the injury or death." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957); *accord* Model Civ. Jury Inst. 9th Cir. 6.4 (2007).

### III. DISCUSSION

Plaintiff's motion for summary judgment with respect to BNSF's liability relies solely on the argument that CUSA was acting as BNSF's agent during the accident, and therefore CUSA's negligence is imputed to BNSF under the FELA. The issue of whether BNSF's officers or employees were directly negligent is not before the Court. Thus, the questions presented are: (1) whether CUSA is, in fact, BNSF's agent as a matter of law; and (2) whether reasonable minds could disagree that CUSA acted negligently when its shuttle driver entered the grade crossing.

**A. Establishing Agency Under the *Hopson/Sinkler* Doctrine**

A railroad's agent, for purposes of the FELA, is one who performs operational activities for the railroad under contract. *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 331 (1958). This principle is what has become known as the *Hopson/Sinkler* doctrine. In *Sinkler*, a cook employed by the railroad was injured when his railcar collided with another railcar. 356 U.S. at 326. The accident occurred because the switching crew failed to switch the car from one rail to another. *Id.* A Texas state court of appeals held that the employee could not recover under the FELA because the railroad contracted out the railcar switching services, and the doctrine of respondent superior did not extend to independent contractors. *Id.* at 328. The Supreme Court of the United States reversed the decision, reasoning the switching employees were "as much a

part of the [railroad's] total enterprise as was the [cook] while engaged in his regular work." *Id.* at 331.

BNSF does not dispute that transporting employees from the Longview Yard to a hotel in Vancouver constitutes an "operational activity." It is well established that the transportation of employees to and from a jobsite or a place of lodging is an operational activity for the purpose of establishing agency. *See, e.g.*, *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263 (1966) (holding the Jones Act incorporates the standard of the FELA); *Robinson v. CSX Transp., Inc.*, 535 F. Supp. 2d 875, 878 (N.D. Ohio 2008); *Keller v. St. Louis-Sw. Ry. Co.*, 952 F. Supp. 711, 713 (D. Kan. 1996).

BNSF does contest, however, that CUSA and BNSF were ever engaged in a contractual relationship because OAI, not BNSF, selected and contracted CUSA to perform shuttle services in Washington. BNSF points to two Ninth Circuit admiralty cases to support this proposition: *Craig v. Atl. Richfield Co.*, 19 F.3d 472 (9th Cir.), *cert. denied*, 513 U.S. 875 (1994) and *Tim v. Am. President Lines, Ltd.*, 409 F.2d 385 (9th Cir. 1969). In *Tim*, the court applied the *Hopson/Sinkler* doctrine to an injured electrician working onboard the *S.S. President Tyler*. 409 F.2d at 385. A crane operating company's negligence caused the injury, but the court held the crane operator was not the defendant shipping line's agent because the defendant did not select the crane operator, or enter into a written or oral contract with the crane operator, or have a financial interest in the crane operating company. *Id.* at 388.

Similarly, *Craig* involved an airplane accident that occurred while transporting drilling employees between Singapore and Indonesia. 19 F.3d at 474–75. The court applied the *Hopson/Sinkler* doctrine to determine whether the charter airline carrying the employees was the agent of the drilling vessel's owners. *Id.* at 477–78. The court concluded it was not because the vessel owners did not enter into a contract with the airline, they did not select the airline, and they did not have an ownership interest in the airline. *Id.* at 478. Furthermore, the vessel owners did not have "actual control" over the airline's flight plans. *Id.*

Like in *Craig* and in *Tim*, BNSF did not select CUSA to transport its employees, and it did not directly contract with CUSA—OAI performed these functions. Moreover, there is no

ORDER - 5

evidence suggesting BNSF had a financial interest or ownership stake in CUSA. For these reasons, CUSA does not appear to constitute BNSF's agent under the *Hopson/Sinkler* doctrine, but the remaining question is whether BNSF exerted actual control over CUSA. *See Craig*, 19 F.3d at 478. Genuine issues of material fact exist as to the level of control BNSF exerted over CUSA, such as the extent to which BSNF dictated the scheduling and other details of employee transportation. Because unresolved factual questions preclude the Court from holding CUSA is BNSF's agent as a matter of law, and because Plaintiff has not asserted any evidence of direct negligence on the part of BNSF's officers or other employees, the Court must deny the motion for summary judgment as to BNSF's liability.

**B. CUSA's Negligence Predicated on a Violation of a Safety Statute**

Plaintiff moves for partial summary judgment as to liability against CUSA on the basis that CUSA violated a safety statute, RCW 46.61.350, when it failed to stop the shuttle before crossing the railroad tracks. First, the parties disagree about which version of the statute was in effect at the time of the accident. RCW 46.61.350 was amended in 1977 to provide as follows:

> (1) The driver of *any motor vehicle carrying passengers for hire*, . . . before crossing at any track or tracks of a railroad, shall stop such vehicle within fifty feet but not less than fifteen feet from the nearest rail of such railroad and while so stopped shall listen and look in both directions along such track for any approaching train, and for signals indicating the approach of a train, . . . and shall not proceed until he can do so safely.

RCW 46.61.350 (1977) (emphasis added). The statute was rewritten during the 2010 Regular Session of the Washington State Legislature to read as follows:

> (1)(a) The driver of *any of the following vehicles* must stop before the stop line, if present, and otherwise within fifty feet but not less than fifteen feet from the nearest rail at a railroad grade crossing unless exempt under subsection (3) of this section:
>
> (i) A school bus or private carrier bus carrying any school child or other passenger;
>
> (ii) A commercial motor vehicle transporting passengers;
>
> \* \* \*

>    (b) While stopped, the driver must listen and look in both directions along the track for any approaching train and for signals indicating the approach of a train. The driver may not proceed until he or she can do so safely.
>
>    * * *
>
>    (4) For the purposes of this section, "commercial motor vehicle" means: Any vehicle with a manufacturer's seating capacity for eight or more passengers, including the driver, that transports passengers for hire; . . . .

RCW 46.61.350 (2010) (emphasis added). Plaintiff relies on the earlier version of the statute, while CUSA relies on the later version of the statute. The later version of the statute became effective on June 10, 2010, therefore it was controlling at the time of the accident on March 23, 2011. 2010 Wash. Legis. Serv. Ch. 15 § 1 (West). Plaintiff argues the amended RCW 46.61.350 did not become effective until July 22, 2011, when the statute was reenacted and further amended, because the amendment conflicted with a second amendment passed in the same session. Pl.'s Reply at 5 [Dkt. #64]. The second 2010 amendment Plaintiff refers to made technical corrections to include gender neutral language in Washington's Revised Code. 2010 Wash. Leg. Serv. Ch. 8 § 9069 (West). These amendments are not in conflict, and the substantive changes to RCW 46.61.350 were not changed when the law was reenacted and amended in 2011. *See* 2011 Wash. Legis. Serv. Ch. 151 § 6 (West) (deleting the words, "United States Department of Transportation in" from Section (1)(a)(iv)). The current language was controlling at the time of the accident.

The CUSA driver did not stop before entering the grade crossing as required by RCW 46.61.350(1)(a). But there is no showing of whether the CUSA shuttle, a Chevy Suburban, constitutes a "commercial motor vehicle" or a "private carrier bus" under RCW 46.61.350. Even if the Suburban meets the statutory definition of a commercial motor vehicle, and the driver violated the safety statute, the violation does not support an inference of negligence per se. *See* RCW 5.40.050 (abolishing per se negligence in all but a few limited circumstances not relevant here). The violation may be considered evidence of negligence by the trier of fact. *Id.* Because Plaintiff has failed to demonstrate that the vehicle in question is, in fact, a commercial motor vehicle applicable under the safety statute, and because the statutory violation does not implicate negligence per se, the Court declines to hold CUSA liable as a matter of law based on the alleged statutory violation alone.

The Court's inquiry does not end here, however.  Summary judgment is still appropriate where reasonable minds could not disagree that CUSA obviated its duty of care under the circumstances.  *See Pudmaroff v. Allen*, 138 Wash. 2d 55, 58, 69–70, 977 P.2d 574 (1999) (finding motorist who struck bicyclist in a crosswalk negligent as a matter of law).  A railroad crossing is "a proclamation of danger" that requires a driver to exercise reasonable care by looking and listening before entering the crossing.  *Carroll Union Pac. R.R. Co.*, 20 Wash. 2d 191, 197, 146 P.2d 813 (1944) (citing *Haaga v. Saginaw Logging Co.*, 169 Wash. 547, 549, 14 P.2d 55 (1932).  Plaintiff alleges CUSA breached this duty when the driver failed to stop before entering the crossing and colliding with the train.  Based on statements from Robert House, Officer Voelker, and Officer Ortner, CUSA responds that stationary train cars obstructed the driver's line of sight, which would explain why he entered the crossing at such an unfortunate time.  Def. CUSA's Resp. at 9–10 [Dkt. #62].  An obstruction to one's line of sight does not relieve a driver's duty to exercise reasonable caution.  *See Keene v. Pac. Nw. Traction Co.*, 153 Wash. 310, 279 P. 756 (1929) ("If [the driver] could not see whether or not he was entering a zone of danger in venturing onto the railway track, it was his duty to take some other means of ascertaining the fact.").

In short, viewing the facts in the light most favorable to CUSA, reasonable jurors might disagree about whether the CUSA driver acted reasonably under the circumstances, and therefore Plaintiff's Motion for Partial Summary Judgment Re Liability is DENIED.

**IT IS SO ORDERED.**

Dated this 25th day of June, 2012.

Ronald B. Leighton
United States District Judge